**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIAN EBERSOLE, individually and as officer of B2B VOICE BROADCASTING, INC. and VOICE MARKETING, INC.;<br><br>VOICE MARKETING, INC., and<br><br>B2B VOICE BROADCASTING, INC.;<br><br>    Defendants. | **Case No. 3:12-cv-00105**<br><br>**STIPULATED JUDGMENT AND ORDER FOR PERMANENT INJUNCTION** |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("Commission"), has commenced this action by filing the complaint, and Defendants have waived service of the summons and the complaint. The parties, represented by the attorneys whose names appear hereafter, have agreed to settlement of this action without adjudication of any issue of fact or law and without Defendants admitting liability for any of the violations alleged in the complaint. This document shall not be considered a finding of wrongdoing by Defendants for any purposes, whatsoever.

**THEREFORE**, on the joint motion of the parties, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

**FINDINGS**

1.  This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345 and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 56(a).

2.  Venue is proper as to all parties in this District.

3.  The activities of Defendants are in or affecting commerce, as defined in Section 4 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 44.

4.  The complaint states a claim upon which relief may be granted against Defendants, under Sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), and 53(b).

5.  Defendants have entered into this Stipulated Judgment and Order for Permanent Injunction ("Order") freely and without coercion. Defendants further acknowledge that they have read the provisions of this Order and are prepared to abide by them.

6.      Plaintiff and Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

7.      Defendants have agreed that this Order does not entitle Defendants to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, and Defendants further waive any rights to attorneys' fees that may arise under said provision of law.

8.      Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.      **"Asset"** and **"Assets"** mean any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.      **"Assisting other persons"** means providing any of the following goods or services to another person while knowing or consciously avoiding knowing that the person receiving assistance is engaged in an act or practice that is prohibited by this Order:  (i) serving as an officer, director, or consultant; (ii) initiating telephone calls for the purpose of delivering recorded messages; (iii) providing or arranging for access to software, equipment that dials stored or generated telephone numbers, or telecommunications

services for the purpose of initiating telephone calls that deliver recorded messages; (iv) providing or arranging for access to services that permit alteration of the name of the calling party displayed by caller identification services;  (v) providing or acquiring lists of names or telephone numbers for the purpose of contacting persons on the list by telephone; (vi) formulating or providing, or arranging for the formulation or provision of, any script or any other material for communicating with customers or potential customers; or (vii) providing any other substantial help or aid.

3.     **"Caller identification service"** means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

4.     **"Charitable contribution"** means any donation or gift of money or any other thing of value.

5.     **"Corporate Defendants"** means Voice Marketing, Inc., a Colorado corporation, its successors and assigns, and B2B Voice Broadcasting, Inc., a Nevada corporation, its successors and assigns.

6.     **"Defendants"** means Voice Marketing, Inc., B2B Voice Broadcasting, Inc., and Brian Ebersole, individually, collectively, or in any combination.

7.     **"Do Not Call request"** means a statement by a person that indicates that he or she does not wish to receive telephone calls initiated to induce the purchase of goods or services or to solicit charitable contributions.

8.    **"Established business relationship"** means a relationship between the seller and a person based on: (a) the person's purchase, rental, or lease of the seller's goods or services or a financial transaction between the person and seller, within the eighteen (18) months immediately preceding the date of the telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

9.    **"National Do Not Call Registry"** means the National Do Not Call Registry, which is the "do-not-call" registry maintained by the Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

10.   **"Outbound telephone call"** means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

11.   **"Person"** means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

12.   **"Representatives"** means Defendants' officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

13.   **"Seller"** means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such person is under the jurisdiction of the Commission.

14.   **"Subscriber"** means any person that, for consideration, authorizes Defendants to initiate, or arranges for Defendants or their Representatives to assist others in initiating, multiple telephone calls for the purpose of delivering recorded messages, but does not include a person that purchases the right to use software and receives no other good or service from Defendants.

15.   **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

16.   **"Telemarketing"** means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.  Telemarketing does not include the solicitation of sales through the mailing of a catalog as set forth in 16 C.F.R. § 310.2(dd) or any other act or practice exempted by 16 C.F.R. § 310.6.

17.   **"Telemarketing Sales Rule"** means the Commission rule titled "Telemarketing Sales Rule," 16 C.F.R. Part 310, attached as Appendix A, or as amended.

## ORDER

## I. PROHIBITION AGAINST ILLEGAL TELEMARKETING PRACTICES

**IT IS ORDERED** that, in connection with telemarketing, Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are permanently restrained and enjoined from engaging in, causing other persons to engage in, and assisting other persons to engage in, violations of the Telemarketing Sales Rule, including, but not limited to:

A.    Initiating any outbound telephone call to any person at a telephone number on the
National Do Not Call Registry unless the seller proves that:

    1.    the seller has obtained the express agreement, in writing, of such person to place
calls to that person.  Such written agreement shall clearly evidence such person's
authorization that calls made by or on behalf of a specific party may be placed to
that person, and shall include the telephone number to which the calls may be
placed and the signature of that person; or

    2.    the seller has an established business relationship with such person and that
person has not previously stated that he or she does not wish to receive outbound
telephone calls made by or on behalf of the seller;

B.    Abandoning, or causing others to abandon, any outbound telephone call to a person by
failing to connect the call to a live operator within two seconds of the person's completed
greeting, unless Defendants or their Representatives prove that the following four
conditions are met:

    1.    Defendants and their Representatives employ technology that ensures
abandonment of no more than three percent of all calls answered by a person,
measured over the duration of a single calling campaign, if less than thirty days, or
separately over each successive 30-day period or portion thereof that the campaign
continues;

2.      Defendants and their Representatives, for each telemarketing call placed, allow the telephone to ring for at least fifteen seconds or four rings before disconnecting an unanswered call;

3.      Whenever a live operator is not available to speak with the person answering the call within two seconds after the person's completed greeting, Defendants or their Representatives promptly play a recorded message that states the name and telephone number of the seller on whose behalf the call was placed; and

4.      Defendants or their Representatives retain records, in accordance with 16 C.F.R. § 310.5 (b)-(d), establishing compliance with the preceding three conditions;

C.   Initiating any outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in 16 C.F.R. § 310.4(b)(4)(iii), unless:

1.      prior to making any such call, the seller has obtained from the recipient of the call an express agreement, in writing, that:

a.      the seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

b.      the seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

c.      evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

    d.     includes such person's telephone number and signature; or

  2.     The telephone call delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPPA Privacy Rule, 45 C.F.R. 160.103;

D.     Failing to disclose truthfully, promptly, and in a clear and conspicuous manner the identity of the seller, that the purpose of the call is to sell goods or services, and the nature of the goods or services; and

E.     Failing to transmit or cause to be transmitted to any caller identification service in use by a recipient of a telemarketing call either: (i) the telephone number of the telemarketer making the call and the name of the telemarketer; or (ii) the telephone number for customer service of the seller on whose behalf the call is made and the name of the seller.

*Provided, however,* that the requirements of this section do not apply to the solicitation of sales by mailing a catalog as set forth in 16 C.F.R. § 310.2(dd) or any other act or practice exempted by 16 C.F.R. § 310.6 and, *provided further* that if the Commission promulgates rules that, in whole or part, modify or supersede the Telemarketing Sales Rule, then, on and after the effective date of any such rules, (1) Defendants and their Representatives shall comply fully and completely with all applicable requirements of such rules and (2) telephone calls that are permitted by such rules do not constitute a violation of this Order if Defendants and their Representatives satisfy all the applicable requirements of such rules.

## II. DISTRIBUTION OF ORDER BY DEFENDANTS, ACKNOWLEDGMENTS OF RECEIPT, AND TERMINATION OF NONCOMPLIANT SUBSCRIBERS

**IT IS FURTHER ORDERED** that:

A.    Defendants shall, within thirty (30) days of the entry of this Order, provide a copy of this Order including Appendix A to all of their owners, principals, members, officers, and directors, as well as managers, agents, servants, employees, and attorneys having decision-making authority with respect to the subject matter of this Order; secure from each such person a signed statement acknowledging receipt of a copy of this Order; and shall, within ten (10) days of complying with this Paragraph, file an affidavit with the Court and serve the Commission, by sending a copy thereof by overnight courier, to the Associate Director for Enforcement, Federal Trade Commission, setting forth the fact and manner of their compliance, including the name and title of each person to whom a copy of the Order has been provided.  Provided that, in lieu of overnight courier, Defendants may serve the Commission with the affidavit by first-class mail, but only if they contemporaneously send an electronic version to the Commission at DEBrief@ftc.gov.

B.    Defendants shall, within ten (10) days of the date of this Order, review all the messages that subscribers deliver with the assistance of Defendants or their Representatives and, for each subscriber that delivers a message to businesses or consumers that promotes the purchase of goods or services or solicits charitable contributions, Defendants or their Representatives shall, within thirty (30) days of the entry of this Order:

1.  Provide the subscriber with: (i) a copy of this Order, including Appendix A; and (ii) a written notice stating that the use of Defendants' services to cause the initiation of telephone calls that do not comply with this Order will result in immediate termination of services; and

2.  Obtain from each such subscriber a signed and dated statement acknowledging receipt of this Order and the written notice concerning immediate termination of services.

C.  Prior to commencing services that assist subscribers or prospective subscribers in delivering a message to businesses or consumers that was not reviewed under Subparagraph B, Defendants shall review the message and, if the message promotes the purchase of goods or services or solicits charitable contributions and the subscriber or proposed subscriber seeking to deliver the messages has not previously provided a statement acknowledging receipt of this Order, Defendants or their Representatives shall:

1.  Provide each such subscriber or prospective subscriber with: (i) a copy of this Order, including Appendix A; and (ii) a written notice stating that the use of Defendants' services to cause the initiation of telephone calls that do not comply with this Order will result in immediate termination of services; and

2.  Obtain from each such subscriber or prospective subscriber a signed and dated statement acknowledging receipt of this Order and the written notice concerning immediate termination of services.

D.  Defendants shall:

1.      Terminate services to any subscriber immediately upon discovering that a
subscriber has used the services of Defendants or their Representatives to initiate
or cause the initiation of telephone calls that do not comply with this Order;

2.      Refuse to provide services to any prospective subscriber if such services would
assist or support the initiation of telephone calls that do not comply with this
Order; and

3.      Provide a copy of this Order (including Appendix A) to any person that purchases
the right to use software to initiate telephone calls to deliver prerecorded messages
and receives no other good or service from Defendants.

### III.  CIVIL PENALTY

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of two million dollars ($2,000,000) is entered against
Defendants, jointly and severally, as a civil penalty, pursuant to Section 5(m)(1)(A) of the
FTC Act, 15 U.S.C. § 45(m)(1)(A).  Upon payment to the Treasurer of the United States
of the amount provided in Subparagraph III.B, the remainder of the civil penalty
judgment shall be suspended subject to the conditions set forth in Subparagraph III.C of
this Order.

B.      Defendants and their attorneys represent that, prior to or concurrently with their execution
of this Order, Defendants have transferred Ten Thousand Dollars ($10,000), as non-
suspended civil penalty payment, to their attorney, who shall hold the entire sum for no
purpose other than payment to the Treasurer of the United States after entry of this Order

by the Court. Within five (5) days of receipt of notice of the entry of this Order, Defendants' attorney shall transfer such civil penalty payment in the form of a wire transfer payable to the Treasurer of the United States. Written confirmation of the wire transfer shall be delivered to: Director, Consumer Protection Branch, U.S. Department of Justice, Civil Division, P.O. Box 386, Washington, DC 20044. The cover letter accompanying the written confirmation shall include the title of this litigation and a reference to DJ# 102-3721. Such transfer by Defendants' attorney shall constitute satisfaction of the portion of the judgment that is not suspended pursuant to this Order.

C.   Plaintiff's and the Commission's agreement to this Order is expressly premised upon the truthfulness, accuracy and completeness of Defendants' sworn financial statements and supporting documents submitted to the Commission, namely those of B2B Voice Broadcasting, Inc., signed by Brian Ebersole and dated July 29, 2011, the sworn financial statement of Brian Ebersole, signed and dated August 22, 2011, and the tax returns for Brian Ebersole, B2B Voice Broadcasting, Inc., and Voice Marketing, Inc., for 2008 through 2010, which include material information upon which Plaintiff and the Commission relied in negotiating and agreeing to this Order. If, upon motion by Plaintiff, this Court finds that Defendants' financial statements and related documents failed to disclose any material asset or materially misstated the value of any asset, or made any other material misstatement or omission, the Court shall lift the suspension of the judgment and require payment of civil penalty in the full amount of the $2,000,000 judgment less all amounts paid to the Treasurer of the United States pursuant to

Subparagraph III.B.  Provided, however, that in all other respects this Order shall remain in full force and effect, unless otherwise ordered by the Court.  Proceedings instituted under this Paragraph are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Plaintiff may initiate to enforce this Order.

D.      Upon entry of this judgment, Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

E.      Defendants agree that the facts as alleged in the complaint filed in this action shall be taken as true, without further proof, in any subsequent civil litigation by Plaintiff or the Commission to enforce its rights to any payment or money judgment pursuant to this Order.  Defendants agree that the judgment represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, therefore, as to Defendant Brian Ebersole is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

F.      In accordance with 31 U.S.C. § 7701, Defendants are required, unless they have done so already, to furnish to Plaintiff and the Commission their taxpayer identifying numbers.  These numbers may be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government.

G.      In the event of default on the payment required to be made by Subparagraph III.B, the entire judgment, together with interest computed under 28 U.S.C. § 1961 – accrued from

the date of default until the date of payment – shall be due and payable.  Defendants shall

cooperate fully with Plaintiff and the Commission and their agents in all attempts to

collect the amount due pursuant to this Paragraph if Defendants fail to pay fully the

amount due at the time specified herein.  In that event, Defendants agree to provide

Plaintiff and the Commission with their federal and state tax returns for the preceding two

years, and to complete new standard-form financial disclosure forms fully and accurately

within ten (10) business days of receiving a request from Plaintiff or the Commission to

do so.  Defendants further authorize Plaintiff and the Commission to verify all

information provided on their financial disclosure forms with all appropriate third parties,

including, but not limited to, financial institutions.

### IV.  RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that for a period of ten (10) years from the date of entry

of this Order, each Defendant shall maintain and make available to the Plaintiff or Commission,

within seven (7) days of the receipt of a written request, business records demonstrating

compliance with the terms and provisions of this Order.

### V.  NOTIFICATION OF BUSINESS CHANGES

**IT IS FURTHER ORDERED** that each Corporate Defendant shall notify the Associate

Director for Enforcement, Federal Trade Commission, at least thirty (30) days prior to any

change in its business, including, but not limited to, merger, incorporation, dissolution,

assignment, and sale that results in the emergence of a successor corporation, the creation or

dissolution of a subsidiary or parent, or any other change that may affect its obligations under this Order.

## VI. NOTIFICATION OF INDIVIDUAL'S AFFILIATIONS

**IT IS FURTHER ORDERED** that Brian Ebersole shall, for a period of ten (10) years from the date of entry of this Order, notify the Associate Director for Enforcement, Federal Trade Commission, within thirty (30) days of his affiliation with a new business or employment whose activities include telemarketing, or of his affiliation with a new business or employment in which his own duties and responsibilities involve the sale or offering for sale of goods or services.

## VII. NOTICES

**IT IS FURTHER ORDERED** that, for the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier (not the U.S. Postal Service) all notifications to the Associate Director for Enforcement required by this Order and documents that must be served upon the Associate Director for Enforcement to:

> Associate Director for Enforcement
> Bureau of Consumer Protection
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington, D.C. 20580
> RE: *United States v. Brian Ebersole, et al.*

*Provided* that, in lieu of overnight courier, Defendants may send such notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at DEbrief@ftc.gov.

## VIII.  COMMUNICATION WITH DEFENDANTS

**IT IS FURTHER ORDERED** that for the purposes of compliance reporting, if undersigned counsel no longer represents a Defendant, Plaintiff and the Commission are authorized to communicate directly with that Defendant.

## IX.  FEES AND COSTS

**IT IS FURTHER ORDERED** that each party to this Order agrees to bear its own costs and attorneys' fees incurred in connection with this action.

## X.  SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another.  If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XI.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

//

//

//

## XII.  COMPLETE SETTLEMENT

The parties, by their respective counsel, consent to entry of the foregoing Order, which shall constitute a final judgment and order in this matter.  The parties further stipulate and agree that the entry of the foregoing Order shall constitute a full, complete, and final settlement of this action.

**JUDGMENT IS THEREFORE ENTERED** in favor of Plaintiff and against Defendants, pursuant to all the terms and conditions recited above.

SO ORDERED this 29th day of February, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

The parties, by their respective counsel, consent to the terms and conditions of the Stipulated

Judgment and Order for Permanent Injunction as set forth above and consent to the entry thereof.

FOR THE PLAINTIFF:

TONY WEST
Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

MAAME EWUSI-MENSAH FRIMPONG
Acting Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director
Consumer Protection Branch

KENNETH L. JOST
Deputy Director
Consumer Protection Branch

ALAN PHELPS
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel:  202-307-6154
Fax: 202-514-8742
Email:  alan.phelps@usdoj.gov

FOR THE FEDERAL TRADE COMMISSION:

LOIS C. GREISMAN
Associate Director for Marketing Practices
FEDERAL TRADE COMMISSION

MICHAEL TANKERSLEY
WILLIAM T. MAXSON
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC  20580

FOR DEFENDANTS:

_____
Voice Marketing, Inc. by
Brian Ebersole, President

_____
B2B Voice Broadcasting, Inc. by
Brian Ebersole, President

_____
Brian Ebersole, individually

_____
William Raney
Copilevitz and Canter, LLC
310 W. 20th St., Ste. 300
Kansas City, Missouri 64108
816-277-0856

8-5-2011

APPENDIX A
Telemarketing Sales Rule

Pt. 310                                    16 CFR Ch. I (1–1–11 Edition)

## PART 310—TELEMARKETING SALES RULE 16 CFR PART 310

Sec.
310.1  Scope of regulations in this part.
310.2  Definitions.
310.3  Deceptive telemarketing acts or practices.
310.4  Abusive telemarketing acts or practices.
310.5  Recordkeeping requirements.
310.6  Exemptions.
310.7  Actions by states and private persons.
310.8  Fee for access to the National Do Not Call Registry.
310.9  Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

§310.1  Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101–6108, as amended.

362

APPENDIX A
Telemarketing Sales Rule

§310.2  Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a state.

· (c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Charitable contribution* means any donation or gift of money or any other thing of value.

(g) *Commission* means the Federal Trade Commission.

(h) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(i) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(j) *Credit card sales draft* means any record or evidence of a credit card transaction.

(k) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(l) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(m) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(n) *Donor* means any person solicited to make a charitable contribution.

(o) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(p) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(q) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(r) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(s) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(t) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the

363

**§ 310.2**

purchase of goods or services or a charitable contribution.

(u) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(v) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(w) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(x) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(y) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(z) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(aa) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(bb) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(cc) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(dd) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(ee) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

364

APPENDIX A
Telemarketing Sales Rule

**Federal Trade Commission**                                    **§ 310.3**

**§ 310.3  Deceptive telemarketing acts or practices.**

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay[659]/s for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[660]/s

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of

participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes

---

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In the case of debt relief services, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before the consumer enrolls in an offered program.

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

365

APPENDIX A
Telemarketing Sales Rule

due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty; and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(1)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661]/≤ or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662]/≤ Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]/≤

[661] Truth in Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 et seq., and Regulation E, 12 CFR part 205.

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

366

APPENDIX A
Telemarketing Sales Rule

**Federal Trade Commission**                                                     **§310.3**

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) The number of debits, charges, or payments (if more than one);

(B) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(C) The amount(s) of the debit(s), charge(s), or payment(s);

(D) The customer's or donor's name;

(E) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(F) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(G) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)–(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to

367

APPENDIX A
Telemarketing Sales Rule

a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

§ 310.4  Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5) (i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(1) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(2) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in § 310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

APPENDIX A
Telemarketing Sales Rule

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(6)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(6)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(6)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(6)(ii)(A) of this section; or

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telemarketing calls established to comply with §310.4(b)(1)(iii);

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or

369

APPENDIX A
Telemarketing Sales Rule

§310.4

on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller:

(i) Has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[664]/s of that person; or

(ii) Has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665]/s and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

---

[664] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

370

APPENDIX A
Telemarketing Sales Rule

**Federal Trade Commission**                                    **§310.4**

(1) Automatically adds the number called to the seller's entity-specific Do Not Call List;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than

thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating §310.4(b)(1)(ii) or (iii) is the result of error.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call.

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]/s; and

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in

---

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

371

APPENDIX A.
Telemarketing Sales Rule

**§ 310.5**                                                      **16 CFR Ch. I (1–1–11 Edition)**

an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

**§ 310.5 Recordkeeping requirements.**

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize

awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]/≤

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of

---

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

372

APPENDIX A
Telemarketing Sales Rule

**Federal Trade Commission**                                  **§310.7**

that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

**§310.6 Exemptions.**

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR Part 308, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR Part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR Part 437, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an adver-

tisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)–(4); or to any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1) of this Rule, for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) of this Rule for any requested charitable contribution; *provided*, however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)–(4); or to any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §310.4(b)(1)(iii)(B) and §310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

**§310.7 Actions by states and private persons.**

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and

373

APPENDIX A
Telemarketing Sales Rule

Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

§310.8  Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under §310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)( i ) or ( ii ), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment

is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)( i ) or ( ii ), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $55 for each area code of data accessed, up to a maximum of $15,058; provided, however, that there shall be no charge to any person for accessing the first five area codes of data, and provided further, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in §310.8(c), each person excepted under §310.8(c) from paying the annual fee, and each person excepted from paying an annual fee under §310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under §310.8(c) must first pay $55 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under §310.8(c) must first pay $27 for each additional area code of data

374

APPENDIX A
Telemarketing Sales Rule

**Federal Trade Commission**                    **§311.3**

not initially selected. The payment of
the additional fee will permit the per-
son to access the additional area codes
of data for the remainder of the annual
period.

(e) Access to the National Do Not
Call Registry is limited to tele-
marketers, sellers, others engaged in or
causing others to engage in telephone
calls to consumers, service providers
acting on behalf of such persons, and
any government agency that has law
enforcement authority. Prior to access-
ing the National Do Not Call Registry,
a person must provide the identifying
information required by the operator of
the registry to collect the fee, and
must certify, under penalty of law,
that the person is accessing the reg-
istry solely to comply with the provi-
sions of this Rule or to otherwise pre-
vent telephone calls to telephone num-
bers on the registry. If the person is ac-
cessing the registry on behalf of sell-
ers, that person also must identify
each of the sellers on whose behalf it is
accessing the registry, must provide
each seller's unique account number
for access to the national registry, and
must certify, under penalty of law,
that the sellers will be using the infor-
mation gathered from the registry
solely to comply with the provisions of
this Rule or otherwise to prevent tele-
phone calls to telephone numbers on
the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug.
24, 2010]

**§310.9  Severability.**

The provisions of this Rule are sepa-
rate and severable from one another. If
any provision is stayed or determined
to be invalid, it is the Commission's in-
tention that the remaining provisions
shall continue in effect.

375